Case number 235676 Thomas Clardy v. Zac Pounds, Warden. Oral argument not to exceed 15 minutes per side. Mr. Douglas for the appellate. Good morning, your honors. May it please the court, Davy Douglas on behalf of the warden. And if I may, I'd like to please reserve three minutes for rebuttal. Yes. Thank you. This court should reverse the judgment of the district court. The state court here reasonably applied Strickland to conclude the petitioner failed to establish any prejudice and that decision is entitled to deference on appeal. And under de novo review, the petitioner has failed to establish any deficient performance on the part of trial counsel. I'm turning first to the state court's opinion. The state court here correctly identified and then petitioner's claim. And what the district court did, the district court here did exactly what this court and our Supreme Court have cautioned against. It essentially zeroed in on one word in the state court's opinion and then basically flyspecked the opinion to conclude that it was an unreasonable application of Strickland. Is that negated? Is that the word? Yes, your honor, it is. And when you look at the opinion as a whole and read it as a whole, that word negated is really just a synonym for undermined or challenged. Because what the state court did here was just applied Strickland to the very specific facts of the case and the legal argument that the petitioner made. And one of the unique aspects of this case was the fact that Kent, who identified the petitioner, was familiar with him. He'd previously interacted with him in the repair shop and he was able to identify the petitioner by his nickname by his first initial on two separate occasions the night of the shooting. He called a friend and said that T committed the shooting and then he referred to the shooter as T at the scene to paramedics and to law enforcement. And you further had Kent later identifying the petitioner in a different location. But based on Kent's familiarity with the petitioner and his ability to identify him based on their prior interactions here, the state court was not creating a per se new rule under Strickland or holding the petitioner to a higher burden. It was simply applying that prejudice standard and concluding here that because Kent actually knew the petitioner that there needed to be something a little bit more than just generalized testimony about the accuracy of an eyewitness identification. If we were going to rule in your favor, maybe this is like picking between your children, but which argument do you think is stronger for the state, deficiency or prejudice and why? I think they're both strong. I knew you were going to say they're both strong. I knew that. I knew that. So just pick between, just do your best. Tell me which one's better. I think prejudice is better just because there's deference. The state court addressed the prejudice prong of Strickland and what the petitioner has to do to obtain relief is to overcome the deference under AEDPA that's due to that decision. And that's a burden he can't meet here. So the problem your friends on the other side would say with that argument in part is that there's this long line of cases which we're supposed to look at, and Wilson's one of them, and they suggest that we have to sort of myopically look at the very strict reasons given by the state court as opposed to sort of the broader conclusion, say that there was no prejudice. I think that would be their main response. And I hear that the court uses the word negated and that's not exactly the reasonable probability or whatever the language is typically under Strickland and AEDPA. So what's your response to that? My response would be that what the role of this court is is to look at the opinion as a whole. What this court recently said in Rogers v. Mays is that habeas corpus relief under AEDPA is available for it to correct extreme malfunctions in the justice system. It's not to create a grading system for state court opinions. And so the whole purpose of AEDPA is for this court to review the state court's decision, giving it the appropriate context that it deserves. And what that means is looking at the opinion as a whole rather than focusing just on one word, which is what the district court did here. And so if we look at the opinion as a whole, how does it, I understand your argument is that the district, I'm sorry, the state court was not making a blanket rule about Strickland, but instead the state court was applying it to the facts of this particular case. Can you explain to me how that cashes out in this case? Yes, Your Honor. And it starts with the state court's recitation of the facts in this case where they candidly acknowledged that the primary evidence of guilt here was Kent's identification. So the court's already looking at the evidence under that backdrop. And then the court goes on to summarize both trial counsel's testimony about the efforts she made to obtain an expert here. Then it summarized Dr. Neuchatz's testimony. And so it's considering all of that proof at the post-conviction hearing against the proof that was presented at trial. And again, it noted in summarizing the post-conviction trial court's order that the court had pointed out that Kent's familiarity with the petitioner was a significant factor in finding no prejudice here. So the court's opinion shows that it was considering the context of the case as a whole and that it was not simply trying to create a new rule here or to hold petitioner to a higher standard under Strickland than is warranted. And so what this court should do is, again, look at that opinion in the entire context and not just zero in on the word negated like the district court did. Would you like to say a few words about performance? Certainly, Your Honor. I would. And I think here counsel's performance was not deficient. She testified about the extensive efforts that she went to to try and obtain an expert here. She gave people rides to the airport. She went to conferences to try and track down experts. She talked to numerous experts. And what she testified to consistently was that she could not find an expert who was willing to testify for the rates that the state would reimburse. And the district court and the petitioner fault trial counsel for basically failing to file a motion with the trial court. But there's nothing in the record that shows such a motion would have been granted or that it would have been successful because trial counsel could not identify an expert to request funding for. And that's required under Tennessee law. Is that correct? You have to identify the expert before you can ask for them? Is that how it works? How does that work? Yes, Your Honor. You have to. It's one of the sort of preliminary steps when you're requesting funding for an expert from the court. You have to satisfy several criteria, one of which is identifying the expert in the expert's chosen field just so that the trial court actually has an idea of who you want to call. And without providing the court with that information, the court cannot go forward and then ultimately grant the motion. And so if counsel had just sort of filed a blank motion without identifying an expert here, the court would have denied it right away. And there hasn't been any proof either that counsel was somehow mistaken about the applicable rates, the available rates, or the availability of the expert. And that's really what distinguishes this case from a case like Hinton v. Alabama. In Hinton, you had an attorney and a trial court who were both objectively incorrect about their understanding of the amount that a defense attorney could get to get reimbursed for in hiring an expert. And because they were both mistaken about that belief, the attorney actually could have requested more funding and could have gotten a different expert. And that's what the Supreme Court focused on in finding that counsel's performance was deficient. Did anyone ever ask the attorney how much she thought an expert would be paid? In other words, I think the district court said, well, she was just speculating because she didn't file the motion. But it does seem there's some sort of a cap. Did anybody ask her what her subjective belief was about the amount that would be paid? Is there any evidence that she was wrong about that? There's no evidence that she was wrong about it, and she was not asked the specific question of what is the dollar amount that you think an expert is entitled to be reimbursed for. But what she did say repeatedly was that she couldn't find an expert willing to testify for the state's rates. And so I think it's a reasonable inference to draw from that testimony that she was aware of the amount that the trial court or that an expert could get reimbursed for if she were to request the use of expert services. But we also don't have anything to the contrary, and that is significant. We don't have any proof that she was wrong. And without that proof, what's speculative is the idea that she could have obtained funding for an expert had she filed the motion without identifying the expert. And that speculation is insufficient to establish that counsel's performance was actually deficient here under Strickland. So if we sort of peeled it all back, in my mind, if there's a problem here, the problem is that the state just wasn't putting up enough money to fund experts. Maybe there's an argument that the state's violating due process or some constitutional provision because it's not doing enough to funds, making it impossible for people to get experts that they may or may not have a right to because they're just not paying enough. Was there any argument by Clardy in the state court that there was a due process problem with the Tennessee funding scheme? I don't believe that there was, Your Honor, and that certainly would have been a way to attack the lack of an expert here. But the way not to attack the lack of an expert is through an allegation that counsel was ineffective. What the record fully bears out here is that counsel made extensive efforts to obtain an expert, and through no fault of her own, she couldn't obtain one. So she then made the choice to proceed to trial and tried to challenge the accuracy of the eyewitness identification, and she also presented an alibi defense for the petitioner. But because the jury was presented with all of the information about the alleged inconsistencies and unreliability in the eyewitness identification, along with the petitioner's alibi defense, all this information was before the jury, and the jury's verdict shows that it credited Kent's identification, and it was not unreasonable for the state court to conclude that under these facts, the petitioner failed to establish prejudice. And so we would therefore ask this court to reverse the judgment of the district court. Thank you. Thank you. We'll hear from Mr. Clarity's attorney. Good morning. May it please the court. I'm Scott Gallistorfer of Bassbury and Sims here in Nashville on behalf of Mr. Clarity. My co-counsel from the Tennessee Innocence Project is here as well, and I did want to point out that Mr. Clarity is in the courtroom this morning, too. Your honors, as both the district court and the magistrate judge held below, Mr. Clarity's trial counsel was constitutionally ineffective  because she failed to take basic steps to procure an expert witness that trial counsel herself believed was important to Mr. Clarity's defense. That failure more than prejudiced Mr. Clarity, and we believe there is no reasonable application of Strickland that could result in a different conclusion. And certainly the state court's analysis here was not a reasonable application of Strickland. Mr. Clarity was convicted of murder and sentenced to life in prison based on what the district court below characterized as paltry and exceedingly weak evidence of guilt. That's the district court's words, not mine. And that evidence, as you know, essentially consisted of one thing. It was a single eyewitness identification made by only one of the two victims of the shooting and which was riddled with credibility problems. To her credit, trial counsel recognized that that was the only evidence of Mr. Clarity's guilt and that the best way to defend this case was to get expert testimony on exactly those credibility problems, which this court has recognized in cases like forensic and Smithers are counterintuitive, are not familiar to the average lay juror. Mr. Cutthroat's case, she tried. She couldn't find anybody. Well, I'm not sure that I would want to exaggerate how much she tried. I mean, she says she called everybody on a list. She got in a car with someone. We don't know how many were on the list. I'm sorry. She got in a car with someone to ride to the airport to try to cajole them to be an expert. She did. That strikes me as a pretty dedicated effort. Right. We don't dispute that she made some effort. I mean, we can maybe disagree on how much effort there was. I would point out that— Are you disputing the lack of effort? I just wanted to cut to the— That's not the crux of her argument is not that the effort she made to find an expert. I would point out that on post-conviction, the Tennessee rule actually prohibits funding for an expert on post-conviction, and post-conviction counsel was still able to find an expert. But I think the crux of her argument is not so much how hard she tried to find an expert. It's that she didn't file the motion, and that sort of amounted to just sort of giving up. I mean, you can't get an expert if you're not going to ask for the funding at all. And the response to that is the motion would have been denied out of hand for not identifying an expert. Yeah, so I don't think we agree with that. There's testimony in the record from trial counsel. She says that she doesn't know any reason why the motion would have been denied, and she also says that the issue was not that she couldn't find an expert. She could find one. The issue was that she couldn't find one who would testify and agree to take the money that she speculated would be authorized. And I don't think there's testimony that the issue here was the rate cap, the $150 hourly rate. If you look at trial counsel's testimony, most of what she talks about is the AOC, that there are problems and there's flack. She uses that word a couple of times with the AOC. And the way the rule works is that you first file a motion with the trial court, you request funding, it gets pre-authorized, and then the claims, the bills on the back end, are submitted to the AOC. And so I think really her concern, if you look at her testimony, was not whether the motion would have been granted up front, but rather whether the state would have paid the fees on the back end. In my rights, there was no sort of due process argument like I described to your friend. There was not. You're right about that, Your Honor. There was no due process argument, and I think the reason for that is because she never requested funding, so there was no denial of funding, and so there really was not a way to make that argument at least on post-conviction. One last question, and then I'll stop. We look at this objectively rather than subjectively from the understanding of counsel. A lot of your argument has been phrased in the mouth of counsel and her view on things, but we look at this more objectively, correct? That's right, and we think this is certainly a case where given how little evidence of guilt there was and because the only evidence was this eyewitness identification that had all kinds of problems, this is one of the cases that the Supreme Court talks about in the Williams case where there are criminal cases that will arise where the only reasonable strategy is to present expert testimony. We think this is one of those cases. It's much like the Jones case from the T.C. Court of Appeals and the Nolan case from the Second Circuit in that regard, but we think this is an even easier case because not only was proceeding with an expert the only reasonable strategy here, but counsel herself recognized that and then didn't take a basic step to ensure that she would be able to present that testimony. But do you disagree that if she had filed the motion without having already procured an expert, it would have been denied? We don't dispute that she needed to identify an expert in the motion, but there is testimony in the record where she said that the issue was not that she couldn't find an expert. So we think she could have found an expert. She could have filed the motion. The motion would have been granted, presumably subject to the $150 rate cap, and she could have gone forward with an expert. I think her concern, again, was on the back end. But I thought she said that nobody would work for that rate. Nobody would work for what the state was paying, which presumably, I mean, she practices in this court, so presumably she knows. I mean, we should assume she knows the rules. Yeah, I mean, we think that at a minimum she should have filed the motion. She identified experts. She should have asked for whatever funding she thought she needed. The motion would have been granted, presumably. Maybe it's limited to the $150 rate cap. I think the- And she was retained counsel, right? So there wasn't even a finding of indigency at this point. Is that correct? She was initially retained, Your Honor. And the testimony in the record is that the defendant's family was originally paying the legal fees and then kind of disappeared and stopped paying those bills. And she continued on pro bono. But there's never been a dispute from the state that Mr. Clardy would not have qualified for indigency if counsel had applied. And he's been treated as indigent on post-conviction as well. I do want to address the prejudice issue as well. Judge Riedler, I think you zeroed in on our argument in terms of the Wilson v. Sellers case. In that case, I think the Supreme Court makes clear that when assessing, when applying EDPA to the court's reasoning, that you look at the actual reasons that the state court gave. You're not sort of reverse engineering some kind of other argument that could have justified the outcome. And I think that's largely what the state is arguing here. They're really not defending the two-sentence analysis that was in the state court's opinion. They're saying there's this other analysis that could have gotten them to the same result. The broad grounds were no prejudice. That's right. But that is certainly the legal conclusion. I get we read the cases where we look back to the state court appeals. I understand that. But then to zero in even in more detail sort of maybe loses the forest through the trees a little bit. The broader ruling was no prejudice. And they gave some reasons why. Maybe those aren't perfectly articulate. But it does seem like you really want us to micromanage the state courts. So I don't agree with what they were asking you to micromanage the state courts. I think this is a case where the only analysis of prejudice is the two sentences in the opinion that we have pointed to. And I don't mean to say that you need to impose length requirements on the state courts. I can certainly imagine plenty of cases where there could even been a one-sentence analysis that if it reflected a reasonable application of Strickland, that would be just fine. The problem here is that the only two sentences that the court gave are not a reasonable application of Strickland. And I think this case is very different from. I know you weren't the lawyers in state court. But in state court, your client's argument as to why there was prejudice was actually just one sentence, I think. There was a long brief, a lot of arguments. But if a jury had heard the expert's information regarding eyewitness identification, both in general in relation to Mr. Clardy's case in particular, would have reached a different conclusion, thereby establishing the threshold required in Strickland. Mr. Clardy's entitled to relief on this issue. So the argument was pretty perfunctory on Mr. Clardy's side. And your rule is that then the state court has to be much more verbose, even though the argument presented to it is pretty narrow. I mean, I think length can be helpful. But there was pretty circumspect on both sides. Yeah, I guess two responses to that. First is, again, I don't think we're arguing that analysis necessarily needed to be longer. Our position is that it needed to be correct. And then I think the other thing I would point out is that there is more argument in the reply brief. I take your point that in the opening brief, there was not a lot of argument on prejudice. But I would point you to the reply brief, which did have a little more. In order to read those two sentences the way the district court did, we have to read them. And I agree it's susceptible of this reading that it was a blanket rule. It's a blanket rule. They misstated the reasonable probability. They turned it into negation. That's wrong. But I don't know. Holland versus Jackson says we're supposed to give state court decisions the benefit of the doubt. The other side says, no, you should read that as being about this particular case. And in this particular case, it's actually an odd case where because the evidence was so where you had dueling witnesses, they're contradicting each other, that maybe an expert isn't going to do any more than the evidence that was already presented. What do you say to that? I certainly think that we read it as a blanket rule. But I don't think you need to read it that way to conclude that it's an unreasonable application of Strickland. And the reason is that I think even as to this case, the court, the TCCA says that merely giving jurors more information to consider is not enough. But of course, that's the exact point of this sort of testimony. And this court has recognized the importance of this kind of testimony, how susceptible jurors are to placing undue weight on eyewitness identifications. There are lots of other cases out there that have found either prejudice or a lack of harmlessness from not having this type of testimony. And the whole point is to give the jury more information. So are you saying, then, that an eyewitness expert is required in every case in which it would depend on eyewitness testimony as the proof? We are not saying that. No, Your Honor. But why not? Well, I think there are certainly cases where that could be the case, depending on the degree of evidence. And so we would say that this was a case where presenting an eyewitness expert was necessary just because the evidence was so weak. And this identification had so many problems associated with it and really all of the factors that this type of testimony addresses. But I don't think you would need to even go that far to rule for Mr. Clardy. And the reason is that this is kind of a two-pronged attack in that you have this really weak evidence of guilt, all of these problems with the identification, and counsel realized all of that and actually wanted to find an expert but didn't follow through. So you kind of got it on both ends there. So I really think this is sort of a unique case in terms of these types of claims. If there's ever a case where failure to procure an eyewitness expert would result in Strickland prejudice, I think it is this case for both of those reasons. Well, I hear you saying that this is a unique case. But what's the best case that you can cite for circumstances that maybe are similar that would indicate that, OK, we've got this, this, this, and this that are like this case, and this is what shows you that under these circumstances, you need to have an expert on eyewitness testimony? I would give you three, Judge Davis. So the first one is the Nolan case from the Second Circuit. The second one is the Jones case from the DC Court of Appeals and then the Hinton case from the Supreme Court. And in the Nolan case and the Jones case, both of those are cases that didn't even have the extra fact of counsel recognizing that an expert was needed. In fact, in the Jones case, counsel said she made a strategic decision not to use an eyewitness expert. And the DC Court of Appeals in that case still found that that was deficient performance, given the centrality of the identification to the verdict there. And if you look at that case, the evidence of guilt was stronger in that case than it was against Mr. Clardy. Same thing is true in the Nolan case. More evidence of guilt than against Mr. Clardy. And so I think his case is easier than both of those cases. And then if you look at the Hinton case from the Supreme Court, that's a case, obviously, about not fully pursuing funding for an expert. And that does not have the eyewitness identification issues in it, obviously. But I guess we're saying, take that principle from Hinton, combine it with the principle from Jones and from Nolan. And this kind of combines them all into one, which makes this an especially easy case, we think. OK. But you're not saying that Hinton stands for the proposition that under this circumstance you have to have expert testimony, are you? Not that you have to have expert testimony. We think the reason Hinton is useful to our argument is because it's a case where counsel didn't request funding that was potentially available. And in that case, the court had actually told trial counsel that I'm limited to this amount. And so I think it's almost more understandable in that case why trial counsel would have taken the court at its word and not requested extra funding. Here, trial counsel is not relying on any statement from the court. It's just sort of this speculation about problems or flack at the AOC. Can I take you back to the deficiency argument? I know that prejudice is what you're focused on. But you mentioned that counsel should have done more. Counsel admitted that, in retrospect, an expert would have been helpful. But I'm wondering, what more was it that counsel should have done? To Judge Larson's point, she did an awful lot. I mean, she talked to multiple individuals to try to get them retained as an expert. So I guess from your perspective, what more should she have done? Well, we think she should have found whatever witness was available, even if it's a rate she didn't have. What evidence is there that there was some expert that would agree? So there's two places in the record where she testifies. First, that, and I'm sorry I don't have the citations for you, but first she says that the issue was not that she couldn't find an expert. It's that she couldn't find an expert that she thought would agree to the funding. Well, that's not the same as saying that, yeah, there was a specific person. Maybe if I had tried Mr. Jones, Mr. Jones probably would have done it. Right. I take the point. And then the second place is that she says that she should have gotten a trial continuance to continue working to find an expert and didn't do that and recognize that that was an error on her part. And then I do think there is some probative value from the fact that on post-conviction, Mr. Clardy did have an expert, even when funding was expressly prohibited by the state rule. If there are no further questions, we'd ask that the court affirm. Thank you. Thank you. We'll hear a rebuttal. May it please the court, just a few quick things on rebuttal. First, I'd like to distinguish this case from Hinton, Nolan, and Jones, which the petitioner cited, as examples of why he's entitled to relief. Both Jones and Nolan are completely different procedural postures. They were 2255 cases. They were not cases that were analyzed under 2254, where there was deference to a state court opinion. And Hinton is readily distinguishable because counsel and the trial court were objectively mistaken about the belief of the amount of money that they could request for an expert. But we don't give deference on the performance sprung here. And I think counsel is raising Jones and Nolan for the performance prong. And they're still distinguishable on the performance prong, because counsel in both of those cases didn't even investigate the possibility of hiring or retaining an expert, which is not the case here. We had counsel who went to great lengths to obtain an expert here. And Judge Davis, you sort of alluded to this with your final question. In terms of what more could counsel have done, there's not anything in the record to show that there is more that she could have done here. There's no proof that there was some expert who was out there who was willing to testify for the amount that the state would pay. There's simply nothing more that counsel could have done here. And her performance was not deficient. She went to great lengths to represent the petitioner and to try and obtain an expert. And our one final point is that the warden in the state here is we're not trying to reverse engineer the state court opinion. We're just asking this court to view the opinion as a whole rather than to zero in on just one word here. And this was sort of alluded to in the questions as well. Part of the reason that the analysis is so short here is because the petitioner's brief was very short. I mean, there's one sentence in his primary brief in which he argued that the failure to get an expert caused him prejudice. So the state court reasonably responded in its opinion to the petitioner's specific arguments in his brief. And the state court's application of Strickland here was not unreasonable. And this court should defer to it on appeal. Thank you. Thank you. The case will be submitted. Thank you for your helpful arguments on both sides.